UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ANDY ALEX ORE-FALCON,

          Petitioner,

    v.

WOFFORD, et al.,

          Respondents.

No. 1:26-cv-00181-WBS-EFB

MEMORANDUM AND ORDER

----oo0oo----

      Petitioner has filed a renewed motion for temporary restraining order and preliminary injunction.  (Docket No. 15.) In his renewed motion, he argues that he is entitled to be provided with a bond hearing or immediately released from custody because (1) he was unlawfully detained pursuant to 8 U.S.C. § 1225's mandatory detention provision, when his circumstances are governed by 8 U.S.C. § 1226; and (2) his detention has become unduly prolonged in violation of the Due Process Clause.  (See id.)

The facts underlying this matter are straightforward. Petitioner unlawfully entered the United States without inspection on February 18, 2015.  (Docket No. 1 at 3.)  He was not otherwise apprehended or encountered by immigration authorities upon his arrival.  (Id.)  On December 16, 2025, petitioner was apprehended at his home by immigration authorities and detained that same day.  (Id.)  He has since been in immigration custody in Bakersfield, California.  (Id. at 2; see Docket No. 15.)

Petitioner has a pending application for a U-Visa, which "affords immigration relief for victims of crime."  (Docket No. 1 at 5.)

I.   Temporary Restraining Order and Preliminary Injunction

"The standard for a [temporary restraining order] is the same as for a preliminary injunction."  Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The last two factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).

Likelihood of success on the merits is "the most

2

important factor in determining whether a preliminary injunction is warranted." Garcia v. County of Alameda, 150 F. 4th 1224, 1230 (9th Cir. 2025) (internal citations and quotation marks omitted). "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy." Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation omitted). A mere possibility of success is insufficient to satisfy this factor; instead, a petitioner must demonstrate "a strong likelihood of success on the merits." Save Our Sonoran, Inc. v. Flowers, 408 F. 3d 1113, 1120 (9th Cir. 2005).

II.  Statutory Claim

8 U.S.C. § 1225(b)(2)(A) requires mandatory detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

A neighboring provision, 8 U.S.C. § 1225(a)(1), clarifies that "[a]n alien present in the United States who has not been admitted ... shall be deemed for purposes of this Act an applicant for admission." The term "admission" is in turn defined "with respect to an alien" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." Id. § 1101(a)(13)(A) (emphasis added). The inclusion of the word "lawful" in the foregoing definition is critical:  it expressly clarifies that an individual may only be considered "admitted" to the United States if their presence therein is with permission.

3

This definition comports with the plain meaning of the word "admit," which is defined in Merriam-Webster's Dictionary as "to allow entry (as to a place, fellowship, or privilege)." Admit, Merriam-Webster, https://www.merriam-webster.com/dictionary/admit (last visited Feb. 3, 2026) (emphasis added).  To construe the statute otherwise -- "that the mandatory detention provision of 1225 categorically does not apply to aliens who are present in the United States as a result of their illegal entry into the country" -- would "fl[y] in the face of defined statutory text" and contravene the plain meaning of the word "admit."  See Chen v. Almodovar, No. 1:25-cv-8350 MKV, 2025 WL 3484855, at *5 (S.D.N.Y. Dec. 4, 2025) (emphasis added).

By contrast, 8 U.S.C. § 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained" pending their final removal decision.  "Thus, one express requirement to fall within § 1226(a) — and the critical one here — is that the alien was arrested on a warrant issued by the Attorney General."  Vargas Lopez, 802 F. Supp. 3d 1132, 1139 (D. Neb. 2025).  Further, pursuant to the Laken Riley Act (the "Act"), subsection (c) of 8 U.S.C. § 1226 was amended to mandate detention for specific categories of noncitizens who have been charged with certain crimes.  See 8 U.S.C. § 1226(c)(1)(E); Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (Jan. 29, 2025) (Laken Riley Act).

The term "applicant for admission" in 8 U.S.C. § 1225 "functions as a legal designation -- describing an individual's

4

legal status for purposes of the removal scheme." Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *4 (E.D. Cal. Nov. 17, 2025) (collecting cases).  And petitioner is subject to this legal designation because he is an "alien," 8 U.S.C. § 1225(a)(1), who is "present in the United States," id., and who "has not been admitted," id., since his entry into the United States was not a "lawful entry . . . after inspection and authorization by an immigration officer," id. § 1101(a)(13)(A). See Mejia Olalde v. Noem, No. 1:25-cv-00168 JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025); Docket No. 1 at 3 (stating that petitioner entered the United States unlawfully and without inspection or authorization).  Petitioner may not "elide[]" this legal designation as an "'applicant for admission' merely because he has already entered the United States." Alonzo, 2025 WL 3208284, at *4; see also Chen, 2025 WL 3484855, at *4 (same conclusion).

Having established that 8 U.S.C. § 1225 applies to petitioner, the court once more concludes that "the procedure authorized by Congress" in that statute constitutes procedural "due process" as far as petitioner is concerned. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953); see also Angov v. Lynch, 788 F.3d 893, 898 (9th Cir. 2015) (for noncitizen who "never technically 'entered' the United States," "procedural due process is simply whatever the procedure authorized by Congress happens to be." (citation modified)); Grigoryan v. Barr, 959 F.3d 1233, 1241 (9th Cir. 2020) (same).

In this case, the process set forth in 8 U.S.C. §

5

1225(b)(2) is clear.  It provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . ."  Id. (emphasis added).  Petitioner, who entered the United States unlawfully in 2015 and was encountered by immigration officials on December 16, 2025, falls squarely within 8 U.S.C. § 1225(b)(2)'s mandatory detention provision.  (See Docket No. 1 at 3.)  Critically, this provision is silent as to the bond hearing petitioner seeks.  Cf. Rodriguez v. Robbins, 715 F.3d 1127, 1143 (9th Cir. 2013) (declining to "read a bond hearing requirement into" 8 U.S.C. § 1225(b)).

Accordingly, petitioner is unlikely to succeed on the merits of his statutory claim.

II.   Prolonged Detention Claim

Determining whether prolonged immigration detention violates the Due Process Clause requires consideration of whether: (1) the petitioner's immigration proceedings have been infected with bad faith or undue delay by the agency; (2) the petitioner's detention is directly associated with a judicial review process that has a definite and evidently impending termination point, and is thus akin to detention during the administrative review process that was upheld by the Supreme Court; and (3) there is evidence that the petitioner is unremovable because the destination country will not accept him or his removal is barred by our own laws.  Uulu v. Warden, 820 F.

Supp. 3d 1113, 1122 (E.D. Cal. 2026).

Petitioner has not put forth any evidence that his immigration proceedings have been infected with bad faith or undue delay.  To the extent that he argues bad faith is present because immigration authorities did not provide him with a bond hearing, he cites no authority for the proposition that respondents' failure to provide him with procedure he is neither statutorily nor constitutionally entitled to constitutes bad faith.  (See Docket No. 15 at 8.)[1]  Petitioner's argument regarding undue delay appears to be that immigration detention in excess of six months constitutes a *per se* violation of the Due Process Clause (see id.), but this argument is unsupported by governing case law.  See Uulu, 820 F. Supp. 3d at 1122 (collecting cases); Singh v. Warden, No. 1:26-cv-0197 WBS CSK, 2026 WL 508296, at *1 (E.D. Cal. Feb. 24, 2026) ("The length of an individual's detention, alone, is not determinative of whether detention violates the Due Process Clause.").

Further, petitioner's detention is "directly associated

---

[1]  In his reply brief, petitioner also argues that respondents acted in bad faith because they did not comply with the preliminary order in Immigration Center for Women & Children v. Noem, No. 2:25-cv-09848 AB AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026), which had not yet been issued when immigration authorities initially detained him.  The decision of another judge in a different district is not binding upon this court any more than that court is bound by the decisions of this court.  It is an unfortunate fact that the district courts within this circuit are deeply divided as to the circumstances that warrant applicability of the relevant immigration statutes.  Furthermore, petitioner cites no authority for his bizarre claim that respondents' failure to accurately predict and comply with a not-yet-issued, and in any case non-binding, preliminary order constitutes bad faith.

7

with [the] judicial review process" of his application for a U-Visa and corresponding cancellation of removal, and is thus akin to "detention during the administrative review process," which the Supreme Court has found to be constitutional. Uulu, 820 F. Supp. 3d at 1122. Lastly, there is no evidence that petitioner is unremovable for any reason or that his removal would be barred by our laws. See id.

Accordingly, petitioner is not likely to succeed on the merits of his Due Process claim.

III. Preclusion Claim

In his reply brief, petitioner argues for the first time that a decision issued by the Central District of California, Immigration Center for Women and Children v. Noem, No. 2:25-cv-09848 AB AS (C.D. Cal. May 20, 2026) ("ICWC"), entitles him to relief. The preliminary injunction issued in ICWC purports to stay, as applied to individuals with pending U-Visa petitions, Immigration and Customs Enforcement ("ICE")'s guidance providing that noncitizens who unlawfully entered the United States without inspection, such as petitioner, shall be mandatorily detained pursuant to 8 U.S.C. § 1225. See 2026 WL 1455004, at *47.

As a threshold matter, courts "need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). This principle is especially salient here, where the preliminary injunction in ICWC was issued on May 20, 2026, and petitioner filed his renewed motion for temporary restraining order and preliminary injunction

8

on June 12, 2026 (Docket No. 15).  Given that timeline, petitioner's failure to make his argument regarding ICWC in his June 12 opening brief, and provide respondents with the opportunity to address it, is unexplained.

Moreover, as other courts confronted with the implications of the ICWC litigation have observed, "the existence of a non-final order entered in separate litigation" is unlikely to "independently establish[] Petitioner's entitlement to emergency injunctive relief in this proceeding."  Rauda Choto v. Ladwig, No. 26-cv-0322, 2026 WL 1652576, at *1-2 (W.D. La. June 8, 2026) (collecting cases and emphasis added).  This court will therefore join its colleagues who have "decline[d] to grant emergency injunctive relief based upon a non-final order issued in another district court."  Id., at *2; see Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (to have preclusive effect, judgment must be final).

Petitioner has failed to demonstrate a likelihood of success on the merits of his claims.  That being the case, the court "need not consider the other [preliminary injunction] factors."  California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018).

IT IS THEREFORE ORDERED that petitioner's motion for a temporary restraining order and preliminary injunction (Docket No. 15) be, and the same hereby is, DENIED.

Dated:  June 29, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

9